The Honorable John C. Coughenour

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

| | |
|---|---|
| A.H. by and through G.H. and L.C., both individually, and on behalf of the MICROSOFT CORPORATION WELFARE PLAN, and on behalf of similarly situated individuals and plans,<br><br>        Plaintiff,<br><br>   v.<br><br>MICROSOFT CORPORATION WELFARE PLAN; and MICROSOFT CORPORATION,<br><br>        Defendants. | No. C17-01889 JCC<br><br>DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(6)<br><br>***Noted for Consideration*:**<br>**Friday, April 27, 2018** |

DEFS.' MOT. TO DISMISS UNDER RULE 12(b)(6)
(C17-01889 JCC)

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND .................................................................................................. 3

      A.    Plaintiff's Original Complaint and Decision in *A.Z. v. Regence Blueshield* ......... 3

      B.    Plaintiff's Amended Complaint ..................................................... 3

      C.    Relevant Plan Provisions ............................................................. 5

III.  ARGUMENT ....................................................................................... 6

      A.    Plaintiff's New Lead Theory Contradicts The Plain Terms Of The Plan. ............. 7

      B.    Plaintiff's Alternative Parity Act Theory Also Fails. ......................... 12

            1.    Plaintiff Fails To Identify Any "Treatment Limitation" That Does Not Apply Equally to Mental Health And Medical/Surgical Coverage. ................................................... 13

            2.    Wilderness Programs Are Not Intermediate Care Under The Parity Act. .............................................................. 16

      C.    Plaintiff's Affordable Care Act "Provider Non-Discrimination" Claim Also Fails. ............................................................ 21

      D.    Several Of Plaintiff's Claims Also Fail For Other Reasons. ............................ 22

            1.    Plaintiff Lacks Standing To Seek Injunctive And Other Prospective Relief. ................................................... 22

            2.    Plaintiff's Claim Under Section 502(a)(2) Fails Because He Does Not Allege Any "Losses To The Plan." .......................... 23

IV.   CONCLUSION .................................................................................. 24

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

# TABLE OF AUTHORITIES

Page(s)

## Cases

*A.Z. v. Regence Blueshield,*
No. C17-1292TSZ (W.D. Wash. Feb. 15, 2018) ...................................................................1

*Abatie v. Alta Health & Life Ins. Co.,*
458 F.3d 955 (9th Cir. 2006) ...........................................................................................11

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)..........................................................................................................7

*B.D. & S.D. v. Blue Cross Blue Shield of Ga.,*
No. 1:16-CV-00099-DN, 2018 WL 671213 (D. Utah Jan. 31, 2018) ...................................14

*Bank of Lake Tahoe v. Bank of Am.,*
318 F.3d 914 (9th Cir. 2003) ...........................................................................................22

*Bova v. City of Medford,*
564 F.3d 1093 (9th Cir. 2009) .........................................................................................22

*Brinderson-Newberg Joint Venture v. Pac. Erectors, Inc.,*
971 F.2d 272 (9th Cir. 1992) .......................................................................................9, 10

*Brobeck, Phleger & Harrison v. Telex Corp.,*
602 F.2d 866 (9th Cir. 1979) ...........................................................................................10

*Cent. Delta Water Agency v. United States,*
306 F.3d 938 (9th Cir. 2002) ...........................................................................................22

*City of Los Angeles v. Lyons,*
461 U.S. 95 (1983)......................................................................................................2, 22

*Cmty. Hosp. of Indianapolis, Inc. v. Schweiker,*
717 F.2d 372 (7th Cir. 1983) ...........................................................................................15

*Craft v. Health Care Serv. Corp.,*
84 F. Supp. 3d 748 (N.D. Ill. 2015) ..................................................................................20

*Cramer v. John Alden Life Ins. Co.,*
763 F. Supp. 2d 1196 (D. Mont. 2011)..............................................................................23

*Daniels-Hall v. Nat'l Educ. Ass'n,*
629 F.3d 992 (9th Cir. 2010) ...........................................................................................14

*Eclectic Props. E., LLC v. Marcus & Millichap Co.,*
751 F.3d 990 (9th Cir. 2014) .............................................................................................7

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Elizabeth L. v. Aetna Life Ins. Co.*,
  689 F. App'x 551 (9th Cir. 2017) ...........................................................12

*Elizabeth L. v. Aetna Life Ins. Co.*,
  No. CV 13-2554 SC, 2015 WL 799417 (N.D. Cal. Feb. 23, 2015).................11, 12

*Evans v. Safeco Life Ins. Co.*,
  916 F.2d 1437 (9th Cir. 1990) ..................................................................9

*Gilliam v. Nev. Power Co.*,
  488 F.3d 1189 (9th Cir. 2007) ................................................................10

*Joseph F. v. Sinclair Servs., Co.*,
  158 F. Supp. 3d 1239 (D. Utah 2016) ......................................................20

*Kohen v. Pac. Inv. Mgmt.*,
  571 F.3d 672 (7th Cir. 2009) ..................................................................23

*LaRue v. DeWolff, Boberg & Assocs.*,
  552 U.S. 248 (2008) .............................................................................23

*Leckey v. Stefano*,
  501 F.3d 212 (3d Cir. 2007)...................................................................23

*In re Madoff*,
  542 B.R. 100 (Bankr. S.D.N.Y. 2015) .......................................................5

*Mass. Mut. Life Ins. Co. v. Russell*,
  473 U.S. 134 (1985).............................................................................23

*N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*,
  163 F.3d 449 (7th Cir. 1998) .................................................................14

*Nat'l Ass'n of Prop. Owners v. United States*,
  499 F. Supp. 1223 (D. Minn. 1980).........................................................15

*Parks Sch. of Bus., Inc. v. Symington*,
  51 F.3d 1480 (9th Cir. 1995) ...................................................................5

*Richardson v. Pension Plan of Bethlehem Steel Corp.*,
  112 F.3d 982 (9th Cir. 1997)....................................................................9

*Scharff v. Raytheon Co. Short Term Disability Plan*,
  No. EDCV07-134 PSG(OPx), 2007 WL 2947566 (C.D. Cal. June 22, 2007)..........6

*Squires ex rel. Squires v. Goodwin*,
  829 F. Supp. 2d 1062 (D. Colo. 2011) .....................................................15

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ................................................................................................23

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ..............................................................................................6

*Texas v. United States*,
    523 U.S. 296 (1998) ..............................................................................................22

*Varity Corp. v. Howe*,
    516 U.S. 489 (1996) ..............................................................................................23

*Welp v. Cigna Health & Life Ins. Co.*,
    No. 17-80237-CIV, 2017 WL 3263138 (S.D. Fla. July 20, 2017) ...................1, 13, 14, 16, 17

*Westlands Water Dist. v. United States*,
    337 F.3d 1092 (9th Cir. 2003) .............................................................................10

*Wise v. Verizon Commc'ns, Inc.*,
    600 F.3d 1180 (9th Cir. 2010) .............................................................................24

## Statutes

29 U.S.C. § 1002 ................................................................................................................4

29 U.S.C. § 1104 ...........................................................................................................4, 5

29 U.S.C. § 1132 ...........................................................................................................4, 5

29 U.S.C. § 1185d .........................................................................................................2, 21

42 U.S.C. § 300gg-5 .....................................................................................................2, 21

Utah Code § 58-60-102 ...................................................................................................19

Utah Code § 58-60-103 ...................................................................................................19

Utah Code § 58-60-109 ..............................................................................................19, 20

Utah Code § 58-60-111 ...................................................................................................19

Utah Code § 58-60-502 ...................................................................................................19

Utah Code § 58-60-504 ...................................................................................................19

Utah Code § 58-60-506 ...................................................................................................19

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

# TABLE OF AUTHORITIES
(continued)

Page(s)

**Rules**

Fed. R. Civ. P. 12 ....................................................................................................6

Fed. R. Civ. P. 15 ....................................................................................................3

**Regulations**

29 C.F.R. § 2590.712 ................................................................................13, 14, 15

78 Fed. Reg. 68,240 (Nov. 13, 2013)
.........................................................................................13, 14, 16, 17, 21

Utah Admin. Code § R432-101 ...............................................................................18

Utah Admin. Code § R432-103 ...............................................................................18

Utah Admin. Code § R432-150 ...............................................................................18

Utah Admin. Code § R501-8 .........................................................................1, 18, 19

Utah Admin. Code § R501-16 .................................................................................18

Utah Admin. Code § R501-19 .................................................................................18

**Other Authorities**

American Therapeutic Recreation Ass'n, *FAQ About RT/TR* ........................................15

Consumer Affairs and Business Regulation, *Bulletin 2009-11 Access to
Intermediate & Outpatient Mental Health & Substance Use Disorder Services* ...................17

U.S. Dep't of Veterans Affairs, *Recreational Therapy: Restoring Function,
Recreating Lives*.......................................................................................................15

DEFS.' MOT. TO DISMISS UNDER RULE 12(b)(6)
(C17-01889 JCC)                                v

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

## I.   INTRODUCTION

Plaintiff's health plan—which the Microsoft Corporation ("Microsoft") sponsors and funds for its employees and their dependents—covers a wide range of medically necessary services to treat medical and mental health conditions (the "Plan"). Like most other health plans, the Plan does not cover tuition or program fees for "wilderness programs," or for other types of recreational or educational programs that lack proven medical effectiveness. This case is about wilderness programs, which generally involve camps, expeditions, and other outdoor activities run by "field staff," who are not licensed medical or mental health professionals.[1] Plaintiff's Plan does not cover wilderness program tuition or other fees, but it *does* cover therapy and other treatment by licensed professionals when provided during a wilderness program.

Plaintiff's Original Complaint contended that the Plan as written contained a "blanket exclusion" of coverage for wilderness programs. Dkt. 1, Compl. ¶ 15; *see also id.* ¶ 8. In that complaint, Plaintiff asked this Court to set aside the Plan's "blanket exclusion" because it allegedly violated a federal law referred to as the "Parity Act" (the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008). But before Defendants had an opportunity to respond, another court in this district dismissed, for failure to state a claim, a similar complaint brought by the same Plaintiff's counsel. *See* Dkt. 33, *A.Z. v. Regence Blueshield*, No. C17-1292TSZ (W.D. Wash. Feb. 15, 2018). Another court, in Florida, had already rejected a similar complaint as well. *Welp v. Cigna Health & Life Ins. Co.*, No. 17-80237-CIV, 2017 WL 3263138 (S.D. Fla. July 20, 2017).[2]

In response to these rulings, Plaintiff changed course in this case. In the Amended Complaint, Plaintiff's new lead theory purports to embrace the Plan as written: Plaintiff now argues that his wilderness program should have been covered under the "plain terms of the Plan." Dkt. 25, Am. Compl. ¶ 1. Plaintiff contends that what he previously referred to as a "blanket

---

[1]   *See generally* Utah Admin. Code § R501-8 (Utah's licensing regulations for "Outdoor Youth Programs," discussed in greater detail below).

[2]   In the same case, the court subsequently dismissed plaintiff's second amended complaint, this time with prejudice, for failure to exhaust administrative remedies. *Welp*, Dkt. 102 (S.D. Fla. March 15, 2018).

DEFS.' MOT. TO DISMISS UNDER RULE 12(b)(6)
(C17-01889 JCC)

1

exclusion" of coverage for wilderness programs does not apply to *licensed* wilderness facilities. *Id.* ¶¶ 1, 60.  But a straightforward examination of the Plan documents—which are attached to the Amended Complaint and which this Court can properly consider on a motion to dismiss— forecloses Plaintiff's new theory.  Plaintiff's interpretation lacks textual support in the Plan, would render superfluous other Plan provisions—including the exclusion for wilderness programs itself—and in effect adds words to the Plan that are not there.

What was previously Plaintiff's lead theory (that the Plan's wilderness program exclusion violates the Parity Act) is now presented as an alternative theory.  Am. Compl. ¶ 75.  Plaintiff still identifies no reason for this Court to break new ground by allowing this theory to move forward.  Neither the Parity Act nor its implementing regulations supports the theory.  Moreover, Plaintiff's claims here are even weaker than the claims that other courts dismissed because here, all of the relevant Plan provisions apply ***equally*** to mental health and medical/surgical coverage.  Whether plan members attend a wilderness program to seek treatment for a mental health condition or a medical condition (such as diabetes or obesity), the Plan does not cover the tuition fees for the program.  The Plan does, however, cover medically necessary treatment provided by eligible licensed professionals at those locations—again, whether that treatment is for a medical or a mental health condition.  All of these provisions—including both the coverage grants and exclusions— apply equally to mental health and medical coverage, dooming Plaintiff's parity theory.

Plaintiff also alleges a violation of the Affordable Care Act's provider non-discrimination provisions, 42 U.S.C. § 300gg-5(a); 29 U.S.C. § 1185d, but the fact that the Plan does not cover wilderness program tuition—for the perfectly legitimate reason that these programs lack proven medical effectiveness—does not constitute impermissible "discrimination" against any "licensed health care provider[s]."

The Court should dismiss Plaintiff's claims for the foregoing reasons.  In addition, Plaintiff lacks Article III standing to seek declaratory and injunctive relief because he does not allege that it is likely that he will require mental health treatment at a wilderness program again in the future.  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983).  And Plaintiff's breach of fiduciary

DEFS.' MOT. TO DISMISS UNDER RULE 12(b)(6)
(C17-01889 JCC)

2

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

duty claim under ERISA Section 502(a)(2), in his second count, also fails because he seeks coverage of his own claim for benefits—not recovery of any "loss to the plan as a whole."

Because any leave to amend would be futile, the Court should dismiss the Amended Complaint with prejudice.

## II.   BACKGROUND

### A.   Plaintiff's Original Complaint and Decision in *A.Z. v. Regence Blueshield*

Plaintiff filed this lawsuit in December of 2017, asserting that in 2016, he "required treatment for [his] mental health condition[] at [a] licensed outdoor/wilderness behavioral healthcare program[]." Compl. ¶ 15. Plaintiff's Original Complaint asserted that the Plan contained a "blanket exclusion" of coverage for wilderness programs, and that this exclusion violated the Parity Act. *Id.*; *see also id.* ¶ 8.

Shortly before Defendants were planning to respond to the Original Complaint, another court in this District dismissed a complaint filed by the same Plaintiff's counsel, that likewise challenged a purported "blanket exclusion" for wilderness therapy under the Parity Act. *A.Z.*, Dkt. 33. Plaintiff subsequently informed Microsoft of his intention to file an Amended Complaint; Microsoft consented, pursuant to Federal Rule of Civil Procedure 15(a)(2).

### B.   Plaintiff's Amended Complaint

Plaintiff's Amended Complaint contains some of the same factual allegations, but modifies his legal theory in several respects. Plaintiff alleges that in 2016 he "sought and received treatment" for "mental illness and substance abuse disorder" "at Wingate Wilderness Therapy ('Wingate'), an outdoor wilderness facility located in Utah." Am. Compl. ¶ 1; *see also id.* ¶ 16.[3] Plaintiff alleges that Wingate is "fully licensed and statutorily authorized to provide an organized program of mental health and substance abuse treatment to youths in an outdoor setting." *Id.* ¶ 1; *see also id.* ¶¶ 13-14; Ex. B to Am. Compl. (Wingate's license to provide "Outdoor Youth Treatment" in Utah).

---

[3]  N.F. was a Plaintiff in the Original Complaint but is no longer a party to the amended suit.

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

Plaintiff alleges in passing that "[p]atients . . . participate in regular individual therapy, group therapy, and family therapy sessions" at Wingate (Am. Compl. ¶ 15), but Plaintiff does not allege who received or provided this therapy or whether, if there were licensed professionals involved, anyone sought or received coverage of it.  As stated above (and as reflected in correspondence sent to Plaintiff), the Plan would have covered therapy (or other medically necessary services) provided by licensed mental health professionals at the wilderness program. Through the Amended Complaint, therefore, Plaintiff seeks coverage of tuition fees for the wilderness program itself.

After unsuccessfully appealing the denial of his claims (Am. Compl. ¶¶ 42, 47), Plaintiff (through his parents) sued both the Plan itself and Microsoft, as the administrator for the Plan.  *Id.* ¶¶ 6-7.  In addition to suing on his own behalf, Plaintiff seeks to represent a putative class of past, present, and future participants or beneficiaries of the Plan who have "required treatment" at a wilderness program.  *Id.* ¶ 49.

Plaintiff asserts four claims under Section 502(a) of the Employee Retirement Income Security Act ("ERISA"), the federal statutory scheme that governs employee health benefits plans, *see* 29 U.S.C. § 1002(1).[4]  The first two claims depend on Plaintiff's new theory that Microsoft purportedly has "violate[d] the plain terms of the Plan" by denying coverage for wilderness programs, including Wingate.  Am. Compl. ¶ 1.  First, Plaintiff seeks recovery of benefits that he alleges were wrongfully denied under the terms of the Plan, as well as a declaration of rights to coverage of wilderness programs, *see* 29 U.S.C. § 1132(a)(1)(B).  Am. Compl. ¶¶ 57-66.  Second, Plaintiff alleges that Microsoft breached its fiduciary duties under ERISA, and purportedly seeks to recover losses suffered *by the Plan*, *see* 29 U.S.C. §§ 1104(a), 1132(a)(2), but without identifying any losses to the Plan itself (as opposed to individual denials of coverage to Plaintiff— which resulted in the Plan *not* paying for non-covered services).  Am. Compl. ¶¶ 67-73.

---

[4]  ERISA's civil enforcement provision, Section 502(a), provides plan members an avenue through which they may seek to enforce their rights with respect to ERISA-governed plans. 29 U.S.C. § 1132(a).

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

Plaintiff asserts a third claim "alternatively, in the event that the Court finds that Microsoft has correctly interpreted the Plan." Am. Compl. ¶ 75.  If wilderness programs are excluded under the terms of the Plan, Plaintiff's third claim nevertheless seeks recovery of benefits, clarification of rights under the Plan and breach of fiduciary duty remedies stemming from Microsoft's alleged failure to administer the Plan in compliance with the Parity Act and/or the provider non-discrimination provisions of the Affordable Care Act, *see* 29 U.S.C. §§ 1132(a)(1)(B), 1104(a), 1132(a)(2). Am. Compl. ¶¶ 74-86.  Fourth, Plaintiff alleges a follow-on claim under 29 U.S.C. § 1132(a)(3) to the extent his requested relief is not available under the other claims.  *Id.* ¶¶ 87-89.

## C.    Relevant Plan Provisions

The Plan terms, which Plaintiff refers to and attaches as Exhibit A to the Amended Complaint, are central to this case.  The Court may therefore consider the Plan documents in connection with this motion to dismiss.  *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) ("When a plaintiff has attached various exhibits to the complaint, those exhibits may be considered in determining whether dismissal was proper without converting the motion to one for summary judgment.").  Plaintiff alleges that A.H. received the relevant treatment in 2016; accordingly, the summary plan description for the 2016 version of the Plan ("2016 SPD") applies to his claims.  However, Plaintiff only submitted a portion of the 2016 SPD (Dkt. 25-1); accordingly counsel for Defendants obtained a complete copy of the 2016 SPD from Microsoft, which is attached as Exhibit A ("Ex. A") to the Declaration of Geoffrey Sigler In Support Of Defendants' Motion To Dismiss Under Rule 12(b)(6).  The Court may properly consider this complete copy of the 2016 SPD in connection with this motion to dismiss.  *See In re Madoff*, 542 B.R. 100, 111 (Bankr. S.D.N.Y. 2015) ("Where the complaint cites or quotes from excerpts of a document, the court may consider other parts of the same document submitted by the parties on a motion to dismiss.").

Likewise, Plaintiff's Complaint refers to—and attaches—the appeals correspondence related to his requests for coverage.  *See* Exhibits B, C, D, and E to the Amended Complaint.  The Court may also consider these letters, as they set out the coverage decisions Plaintiff challenges,

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

1    and the bases for those decisions.  *See Scharff v. Raytheon Co. Short Term Disability Plan*, No.

2    EDCV07-134 PSG(OPx), 2007 WL 2947566, at *4 (C.D. Cal. June 22, 2007), *aff'd*, 581 F.3d 899

3    (9th Cir. 2009) (considering claim denial letters and appeal denial letters in connection with a

4    motion to dismiss ERISA claims where the letters were "integral" to the complaint).

5        These materials show that the relevant Plan terms apply equally to mental health and

6    medical coverage.  For example, the Plan covers only "medically necessary" treatment provided

7    by "eligible provider[s]."  Ex. A at 32; *see also id.* at 42.  Medically necessary services or supplies

8    are "essential to . . . diagnosis or . . . treatment," and are "appropriate for the medical condition as

9    specified in accordance with authoritative medical or scientific literature and generally accepted

10   standards of medical practice."  *Id.* at 33; *see also id.* at 321.  The Plan defines "eligible providers"

11   differently for different types of services, to ensure that a provider is properly licensed to provide

12   medically necessary care; this requirement too is repeated throughout the Plan in reference both to

13   medical and mental health services.  *See, e.g.*, Ex. A at 32, 46, 59, 60, 62, 72, 74, 78; Ex. E to Am.

14   Compl. ("Ex. E") at 1.

15       Through these provisions, the Plan covers both medical and mental health treatment in a

16   wide range of settings—including mental health treatment at psychiatric hospitals, eligible

17   residential treatment centers, and intensive outpatient program services. Ex. A at 58-59.  The Plan

18   also contains some exclusions.  In particular, the Plan does not cover "[e]ducational or recreational

19   therapy or programs," which it defines to include "boarding schools and wilderness programs."

20   Ex. A at 60, 78 (the "Educational/Recreational Exclusion").  But it does cover "[b]enefits . . .

21   provided for medically necessary treatment received in these locations if treatment is provided by

22   an eligible provider."  *Id.* at 60, 78.  This Educational/Recreational Exclusion applies equally to

23   mental health and medical/surgical coverage.  It appears in the general exclusions section (*id.* at

24   78), and is also repeated verbatim in the mental health section of the Plan (*id.* at 60).

### III.   ARGUMENT

26       On a motion to dismiss under Rule 12(b)(6), the court considers the complaint in its

27   entirety, as well as documents incorporated into the complaint by reference, and matters of which

28   a court may take judicial notice.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

(2007).  It then determines whether the allegations in the complaint and information from other permissible sources "plausibly suggest an entitlement to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).  Bare assertions that amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true."  *Id.* at 680-81 (quotation marks omitted).  Rather, to state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions.  *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (quotation marks and citation omitted).  Here, Plaintiff's allegations fail to satisfy this standard.

**A.  Plaintiff's New Lead Theory Contradicts The Plain Terms Of The Plan.**

Plaintiff's lead theory—presented in the first and second counts of the Amended Complaint—is that the "plain terms of the Plan" supposedly required coverage of Plaintiff's participation in a wilderness program.  Am. Compl. ¶ 1; *see id.* ¶¶ 57-66 ("First Claim"); *id.* ¶¶ 67-73 ("Second Claim").  This contention is directly at odds with Plaintiff's Original Complaint, however, in which he interpreted his Plan as containing a "blanket exclusion" of coverage for "outdoor/wilderness behavioral healthcare programs," and argued that such exclusions are barred by the Parity Act.  Compl. ¶ 16.  Only after dismissals of two other cases in which Plaintiff's counsel pursued the same flawed theory did Plaintiff revamp his Complaint to argue that his Plan, as he now interprets it, supposedly *covers* "licensed" wilderness programs.  Not only does Plaintiff's new theory contradict the plain terms of the Plan, but it would also read the provision that specifically addresses "wilderness programs"—the provision he previously called a "blanket exclusion"—out of the Plan.  All of Plaintiff's claims premised on this new theory should be dismissed.

Several Plan provisions are particularly relevant to Plaintiff's new theory.  First, the Plan includes a broad affirmative grant of coverage for "medically necessary treatment for . . . mental health" and "substance abuse" if "furnished by an eligible provider."  Ex. A at 58.  "Eligible provider[]" is defined to include, among other provider types, licensed hospitals, physicians, psychiatrists, as well as "[a]ny other provider or facility who is licensed or certified by the state in which the care is rendered and who is providing care within the scope of their license or

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

certification." *Id*. at 59.  Wilderness programs are not specifically addressed in either of these provisions.

Second, just after the affirmative coverage grant discussed above, the Plan states that "[i]n addition to the plan's Exclusions and limitations, the following exclusions and limitations apply to this benefit," including:

> Educational or recreational therapy or programs; this includes, but is not limited to boarding schools and ***wilderness programs***.  Benefits may be provided for medically necessary treatment received in these locations if treatment is provided by an eligible provider.

*Id*. at 59-60 (emphasis added).   This is the provision referred to above as the Educational/Recreational Exclusion—the same provision Plaintiff previously referred to as a "blanket exclusion" of coverage for wilderness programs.

Reading these provisions together—as the Court must—supports the straightforward interpretation that the Plan's claims administrator provided in response to Plaintiff's coverage requests and appeals: the Plan *does not* cover "wilderness programs" themselves, but *does* cover medically necessary treatment "received in" the wilderness "if treatment is provided by an eligible provider"—*e.g.*, medically necessary individual or group therapy by a licensed psychiatrist or therapist.  *See* Ex. E at 1.  Plaintiff therefore could submit a request for coverage of these latter services *if* they were received while he was enrolled in the wilderness program.  But Plaintiff does not so allege—rather, he vaguely asserts that "[p]atients also participate in" different types of "therapy" at Wingate, but does not allege that *he* participated in these sessions, whether any licensed professionals were involved in any services provided to *him*, or whether Plaintiff sought or received reimbursement for any such services.  Am. Compl. ¶ 15.

Plaintiff offers a different interpretation in his Amended Complaint.  Plaintiff contends that all fees and costs of "licensed" wilderness programs, like Wingate, should be covered because these programs fall within the catch-all phrase at the end of the definition of "Eligible Provider" ("[a]ny other provider or facility who is licensed or certified. . . ." (Ex. A at 59)).  Am. Compl. ¶¶ 1, 60.  Plaintiff alleges that Wingate is licensed by the State of Utah to operate a wilderness

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

program and attaches a copy of its license. But as is described in greater detail below, *see infra* at 17-19, the license that Wingate has is very different than a license belonging to the providers listed in the Plan's definition of "Eligible Provider"—*e.g.*, hospitals, psychiatrists, and therapists. Utah's licensing regulations for wilderness programs, like Wingate, merely require them to be run by "field staff" who satisfy minimum age requirements (generally in the late teens and early twenties) and who have a certain number of hours of wilderness training. The regulations do not require any licensed medical or mental health professionals to be on-site at the program. Other relevant differences are discussed below in greater detail. *See infra* at 17-19.

Moreover, even if Wingate could be considered an "Eligible Provider" when taking the Plan's definition of this term in isolation, other provisions of the Plan—namely the Educational/Recreational Exclusion itself—foreclose Plaintiff's interpretation. ERISA plans, like other contracts, are interpreted using traditional canons of contract interpretation, requiring that plan provisions be read together, not in isolation. *See Richardson v. Pension Plan of Bethlehem Steel Corp.*, 112 F.3d 982, 985 (9th Cir. 1997).

The Educational/Recreational Exclusion states clearly—as Plaintiff previously acknowledged in his Original Complaint—that "wilderness programs" are excluded from coverage. Wingate is a wilderness program (Am. Compl. ¶ 1), so a straightforward application of this provision means that its fees and costs are not covered. *See Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1441 (9th Cir. 1990) ("We interpret terms in ERISA insurance policies 'in an ordinary and popular sense as would a [person] of average intelligence and experience.'" (citation omitted, alteration in original)).

Additionally, because the Educational/Recreational Exclusion clearly and specifically addresses "wilderness programs," the Plan's general definition of "Eligible Provider" should not be read broadly (even if it could be read this way in isolation) so that it overrides the more specific "wilderness programs" exclusion. *See Brinderson-Newberg Joint Venture v. Pac. Erectors, Inc.*, 971 F.2d 272, 279 (9th Cir. 1992) ("It is well settled that '[w]here there is an inconsistency between general provisions and specific provisions, the specific provisions ordinarily qualify the meaning of the general provisions.'" (quoting Restatement of Contracts § 236(c) (1932), alteration in

DEFS.' MOT. TO DISMISS UNDER RULE 12(b)(6)
(C17-01889 JCC)                                      9

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

1   original)); *Brobeck, Phleger & Harrison v. Telex Corp.*, 602 F.2d 866, 872 (9th Cir. 1979) ("[T]he

2   meaning of words contained in a contract is to be determined . . . from a reading of the entire

3   contract." (quotation marks and citation omitted)).

4          Nor is there any basis for Plaintiff's argument that Wingate's license from the State of Utah

5   changes this analysis. Am. Compl. ¶¶ 1, 28, 44. The Educational/Recreational Exclusion excludes

6   coverage of all "wilderness programs"—the exclusion does not say that it only pertains to

7   "*unlicensed* wilderness programs." *See Westlands Water Dist. v. United States*, 337 F.3d 1092,

8   1103 (9th Cir. 2003) ("A court cannot, under the guise of construction, add words to a contract,

9   which would impermissibly re-write that contract." (quotation marks and citation omitted)).

10         Critically, Plaintiff's interpretation would also render superfluous the "wilderness"

11  exclusion itself. Any services by *un*licensed wilderness programs—the only programs falling

12  within the "wilderness programs" exclusion in Plaintiff's view—would not be covered anyway,

13  even before getting to the exclusion. *See* Ex. A at 58 (covering only services by Eligible

14  Providers); *id.* at 59 (defining Eligible Provider in reference to "licensed" providers and facilities).

15  In other words, under Plaintiff's interpretation, there would be no need for a "wilderness

16  programs" exclusion at all—it would be written out of the Plan because the Plan already only

17  covers services by licensed providers. That result cannot be reconciled either with the Plan's terms

18  or with canons of contractual interpretation. *See Gilliam v. Nev. Power Co.*, 488 F.3d 1189, 1194

19  (9th Cir. 2007) ("[W]e endeavor to interpret each provision consistent 'with the entire document

20  such that no provision is rendered nugatory.'" (citation omitted)); *Brinderson-Newberg Joint*

21  *Venture*, 971 F.2d at 278-79 ("It is well settled that a contract should be interpreted so as to give

22  meaning to each of its provisions[.]"); *id.* at 279 ("Since an agreement is interpreted as a whole, it

23  is assumed in the first instance that no part of it is superfluous." (quotation marks and citation

24  omitted)).

25         Plaintiff's interpretation of the Educational/Recreational Exclusion is unworkable for yet

26  an additional reason. Plaintiff contends that the first part of this exclusion (excluding coverage of

27  "wilderness programs") is overridden by the second part (allowing coverage of "medically

28  necessary treatment received in these locations by an eligible provider"), purportedly because

DEFS.' MOT. TO DISMISS UNDER RULE 12(b)(6)
(C17-01889 JCC)                                        10

Wingate was "licensed" and therefore an "eligible provider."  But if the "wilderness program" itself *is* the "eligible provider," as Plaintiff contends, then the phrase "in these locations" in the second part of the exclusion makes no sense: any treatment provided by a "wilderness program" would always take place "in the[] location[]" of the wilderness program.  The Plan's interpretation—by which the second part allows coverage of medically necessary treatment when provided by licensed professionals "in the[] location[]" of the non-covered wilderness program— makes more sense.  It is at least a *reasonable* interpretation, and in these circumstances the Plan's interpretation prevails.  *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (Where a plan confers discretionary authority on a claims administrator to "interpret plan terms and to make final benefits determinations," a court reviews the administrator's interpretation and determination for an abuse of discretion.).[5]

Because Plaintiff's claim cannot be reconciled with the terms of the Plan, the Court should dismiss it.  Indeed, the Ninth Circuit previously affirmed an order dismissing, with prejudice, a complaint asserting a similar theory, in *Elizabeth L. v. Aetna Life Insurance Co.*, No. CV 13-2554 SC, 2015 WL 799417 (N.D. Cal. Feb. 23, 2015), *aff'd*, 689 F. App'x 551 (9th Cir. 2017).  There, plaintiffs challenged denials of coverage for their psychiatric residential treatment, based on the plans' requirement that licensed "Behavioral Health Providers" be "onsite 24/7" at the residential treatment facility for that facility to be covered.  The plaintiffs argued that their residential treatment facilities were licensed and therefore met the plans' definition of a "Behavioral Health Provider," defined as "[a] licensed organization or professional providing diagnostic, therapeutic or psychological services for behavioral health conditions."  *Id.* at *2 (quotation marks and citation omitted).  Plaintiffs therefore argued that the residential treatment facilities *themselves* satisfied the "24/7 requirement." *Id.* at *1.

---

[5] The Plan here clearly confers discretionary authority on both Microsoft and Premera Blue Cross, as the claims administrator for the Plan.  *See* Ex. A at 332 ("Microsoft shall have complete discretion to interpret and construe the provisions of the plan options, programs, and policies described in this SPD, to determine eligibility for participation and for benefits, make findings of fact, correct errors and supply omissions . . . Microsoft may delegate this discretionary authority to select service providers.").

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

As is the case here, in *Elizabeth L.*, the court recognized that it was impossible to "harmonize" plaintiffs' broad interpretation of a general provision (the definition of "Behavioral Health Provider") with the specific criteria for coverage of residential treatment centers. *Id.* at *3 ("The problem with Plaintiffs' view arises when trying to harmonize the definition of [Behavioral Health Provider] with the 24/7 requirement."). Plaintiffs' interpretation in *Elizabeth L.* rendered nugatory the distinct 24/7 requirement, because a licensed residential treatment facility would always be "onsite 24/7" at that facility. The court explained: "By definition a facility is on-site 24/7 because a facility *is a site.*" *Id.* at *3 (emphasis in original); *id.* ("[R]eading the words 'Behavioral Health Provider' in the 24/7 requirement to include facilities is to simultaneously read '[o]n-site' and '24 hours per day/7 days a week' out of the plan, because such terms have no meaning when applied to facilities." (second alteration in original)). The Ninth Circuit affirmed the district court's dismissal of the case with prejudice. *Elizabeth L. v. Aetna Life Ins. Co.*, 689 F. App'x 551, 552 (9th Cir. 2017).

Plaintiff's newfound interpretation here, by which the Plan supposedly covers wilderness programs despite an express exclusion to the contrary, so long as the programs themselves have some sort of a license, is similarly unsupported. Because Plaintiff rests the Amended Complaint on a theory that cannot be reconciled with the terms of the Plan or the governing rules of plan interpretation, the Court should dismiss the Amended Complaint.

**B.    Plaintiff's Alternative Parity Act Theory Also Fails.**

This Court should also reject Plaintiff's alternative theory: that the Plan's "exclusion of wilderness programs . . . violates the Parity Act." Am. Compl. ¶¶ 75, 83; *see also id.* ¶¶ 74-86 ("Third Claim"). Plaintiff alleges that Microsoft has violated the Parity Act due to its "practice of excluding wilderness therapy—a form of intermediate therapy to treat mental illnesses" when "comparable intermediate medical/surgical services, such as skilled nursing facilities and rehabilitation hospitals . . . are expressly covered." *Id.* ¶¶ 33, 34.

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

As indicated, this was previously Plaintiff's lead theory in his Original Complaint. Plaintiff's Parity Act claims should be dismissed here, for reasons addressed by the courts in *Welp* and *A.Z.*, and for additional reasons as well.

### 1. Plaintiff Fails To Identify Any "Treatment Limitation" That Does Not Apply Equally to Mental Health And Medical/Surgical Coverage.

"To properly plead a Parity Act violation resulting from the denial of the wilderness program's coverage, the first thing Plaintiff[s] must do is correctly identify the [plan's] relevant limitation . . . [and] then allege a flaw in this limitation based on a comparison to a relevant [medical/surgical treatment] analogue." *Welp v. Cigna Health & Life Ins. Co.*, No. 17-80237-CIV, 2017 WL 3263138, at *5 (S.D. Fla. July 20, 2017); *see also A.Z.*, Dkt. 33 at 1-2 (concluding that the complaint "[did] not allege sufficient facts to show that the policy or Regence's interpretation of the policy violate[d]" the Parity Act or the Affordable Care Act (citing *Welp*, 2017 WL 3263138, at *3-7)).  Like plaintiffs in the two other cases that have been dismissed, Plaintiff cannot do so here, and so the Court should dismiss the Third Claim of the Amended Complaint as well.

Neither the Parity Act itself nor its implementing regulations purport to require coverage of wilderness programs.  Rather, the Parity Act's implementing regulations specify that parity is required between "treatment limitations" applicable to mental health benefits and medical/surgical benefits within the same "classification"—*i.e.*, (1) inpatient, in-network; (2) inpatient, out of network; (3) outpatient, in-network; (4) outpatient, out of network; (5) emergency care; and (6) prescription drugs.  29 C.F.R. § 2590.712(c)(2)(ii).[6]  The Final Rules, which became effective in 2014, clarified that "plan or coverage restrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for services must comply with the [non-quantitative treatment limitation] parity standard. . . ."  *See* Preamble, Final

---

[6]  The implementing regulations require parity in quantitative and non-quantitative treatment limitations.  29 C.F.R. § 2590.712(a).  To be in parity, with respect to any non-quantitative treatment limitation, plans must use "comparable" "processes, strategies, evidentiary standards, or other factors" in applying the limitation to mental health benefits as they use in applying the limitation to medical/surgical benefits.  *Id.* § 2590.712(c)(4)(i).  An "[i]llustrative" list of non-quantitative treatment limitations includes "[m]edical management standards limiting or excluding benefits based on medical necessity. . . ."  *Id.* § 2590.712(c)(4)(ii)(A).

DEFS.' MOT. TO DISMISS UNDER RULE 12(b)(6)
(C17-01889 JCC)

13

Rules, 78 Fed. Reg. 68,240, 68,247 (Nov. 13, 2013); *see also* 29 C.F.R. § 2590.712(c)(4)(ii)(H). Accordingly, the Final Rules clarified that "intermediate services" are subject to the Parity Act's requirements.   *See* Preamble, Final Rules, 78 Fed. Reg. at 68,247.   Under these rules, skilled nursing facilities and rehabilitation hospitals, types of intermediate care, "are the medical/surgical scope of services analogue for residential mental health treatment centers." *B.D. & S.D. v. Blue Cross Blue Shield of Ga.*, No. 1:16-CV-00099-DN, 2018 WL 671213, at *4 (D. Utah Jan. 31, 2018) (quotation marks and citation omitted); *see also* Preamble, Final Rules, 78 Fed. Reg. at 68,247.

To plead a claim, therefore, Plaintiff needs to identify a "treatment limitation" that he challenges, as well as a medical/surgical analogue that the Plan does not treat in a comparable fashion, and allege that both fall within the same classification under the foregoing framework. As the court in *Welp* explained, a plaintiff cannot assert a Parity Act violation by "consider[ing] wilderness programs in isolation." *Welp*, 2017 WL 3263138, at *6.

Plaintiff's Amended Complaint skates around these required elements of a Parity Act violation because he cannot establish them.   Plaintiff purports to challenge the Plan's practice of excluding coverage of "outdoor/wilderness *behavioral* healthcare programs"—apparently attempting to suggest that the relevant Plan exclusion applies only to "behavioral" services.   Am. Compl. ¶ 38 (emphasis added).   But his Plan shows otherwise: the Educational/Recreational Exclusion—as well as other relevant provisions applicable to his benefits claims—apply ***equally*** to mental health and medical coverage.[7]   The Educational/Recreational Exclusion—which states that the Plan does not cover "[e]ducational or recreational therapy or programs," such as "boarding schools and wilderness programs"—applies equally to mental health and medical benefits.   Ex. A at 60, 78.   The Plan makes this clear by including this provision in the general exclusions, which

---

[7]   Where, as here, allegations contradict the terms of the operative document, that document controls.   *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) ("We are not, however, required to accept as true allegations that contradict exhibits attached to the Complaint. . . ."); *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998) ("It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.").

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

apply to all medical and mental health benefits. *Id.* at 78.[8]  Because the exclusion applies equally to all Plan benefits, Plaintiff cannot, and does not, allege any facts showing that the Plan failed to use comparable "processes, strategies, evidentiary standards, or other factors" in applying the Educational/Recreational Exclusion to mental health and medical/surgical benefits.  *See* 29 C.F.R. § 2590.712(c)(4)(i).

Other relevant provisions—providing other bases for denial of coverage—also apply equally to medical and mental health coverage.  For example, the Plan only covers services that are "medically necessary" and proven effective, regardless of whether those services are medical or mental health services.  Ex. A at 42 (italics omitted).  Wilderness programs do not satisfy those requirements based on "a number of considerations, such as whether the service is generally accepted in the medical community as an effective medical treatment, the availability of scientific research addressing the service's medical efficacy, the existence and pervasiveness of state licensing standards for providers of the service, and whether there are generally accepted medical standards for evaluating medical necessity." Ex. E at 1.[9]  Additionally, the Plan only covers

---

[8] Patients can and do enroll in these programs to treat both medical and mental health conditions. *See, e.g.*, *Cmty. Hosp. of Indianapolis, Inc. v. Schweiker*, 717 F.2d 372, 377-78 (7th Cir. 1983) (Wood, J., dissenting) (discussing use of "[r]ecreational therapy" to treat "the patient's disability, illness or injury"); *Squires ex rel. Squires v. Goodwin*, 829 F. Supp. 2d 1062, 1074 (D. Colo. 2011), *aff'd sub nom. Squires v. Breckenridge Outdoor Educ. Ctr.*, 715 F.3d 867 (10th Cir. 2013) (describing a particular "wilderness program, which facilitates year-around programming for people with disabilities and special needs."); *Nat'l Ass'n of Prop. Owners v. United States*, 499 F. Supp. 1223, 1236 (D. Minn. 1980), *aff'd sub nom. State of Minn. by Alexander v. Block*, 660 F.2d 1240 (8th Cir. 1981) ("Programs are presently in operation that promote the use of the Wilderness by persons with handicaps.  These programs help train the handicapped person in planning and executing trips into the Wilderness."); U.S. Dep't of Veterans Affairs, *Recreational Therapy: Restoring Function, Recreating Lives*, *available at* https://www.va.gov/health/newsfeatures/20110712a.asp (explaining that the "benefits of recreation therapy for Veterans include improving physical well being such as weight management and controlling diabetes and hypertension"); American Therapeutic Recreation Ass'n, *FAQ About RT/TR*, *available at* https://www.atra-online.com/what/FAQ (describing "recreational therapy" as a "systematic process that utilizes recreation and other activity-based interventions to address the assessed needs of individuals with illnesses and/or disabling conditions, as a means to psychological and physical health, recovery and well-being").

[9] As in *A.Z. v. Regence Blueshield*, "Plaintiff[] fail[ed] to put forth allegations that the wilderness program would be covered under the policy but for the purported treatment limitation Plaintiff[] rel[ies] on." Dkt. 33, at 2.  For example, Plaintiff has not alleged any facts from which the Court can infer that Plaintiff's treatment at Wingate was medically necessary. Plaintiff simply asserts that the "services provided to A.H. by Wingate were medically

---

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

services provided by eligible providers—another requirement that applies equally to medical and mental health coverage. *See, e.g.*, Ex. A at 32, 46, 59, 60, 62, 72, 74.

For all of these reasons, Plaintiff's theory here is even weaker than the Parity Act claims that two other courts have already rejected. In *Welp*, for example, the challenged wilderness exclusion was contained solely in coverage criteria for mental health coverage (*see* 2017 WL 3263138, at *2).[10] Plaintiff offers no reason why this Court should reach a novel ruling here, where the Plan exclusion (unlike the one in *Welp*) applies *equally* to medical and mental health coverage. Plaintiff's Parity Act theory here should be rejected and his claims premised on this theory should be dismissed.

### 2. Wilderness Programs Are Not Intermediate Care Under The Parity Act.

In addition to Plaintiff's fatal failure to identify a "treatment limitation" that does not apply equally to mental health and medical/surgical coverage, Plaintiff does not allege any facts showing that wilderness programs constitute intermediate care under the Parity Act. Plaintiff merely asserts without support that wilderness programs should be viewed as comparable to residential treatment facilities—and therefore must be covered under the Plan because the Plan covers other "intermediate" medical services. Amend. Compl. ¶ 32; *see also id.* ¶¶ 2, 33. There is no basis for the comparison.

As described above, the Parity Act requires only that treatment limitations be comparable within the same classifications of services. The preamble to the final regulations, effective in 2014, provided for the first time that such classifications needed to account for "intermediate" treatment, which is defined as including the following types of mental health treatment: residential treatment, partial hospitalization, and intensive outpatient treatment. Preamble, Final Rules, 78

---

necessary under the terms of the Plan." Am. Compl. ¶ 26. Nor does Plaintiff allege any facts showing that wilderness programs have been proven effective. Such conclusory allegations are insufficient to show that Wingate should have been covered even *if* the Plan did not expressly exclude coverage of wilderness programs.

[10] In the relevant coverage standards and criteria at issue in *Welp*, wilderness programs are listed under an Exclusions subheading as an example of a type of program that does not meet the criteria for a psychiatric residential treatment facility. *See* 2017 WL 3263138, at *2.

DEFS.' MOT. TO DISMISS UNDER RULE 12(b)(6)
(C17-01889 JCC)

16

Fed. Reg. at 68,246.  The preamble also provided that the analogous mental health coverage for skilled nursing facilities and rehabilitation hospitals is residential treatment facilities.  *Id.* at 68,247. Neither the regulations nor the preamble stated or otherwise provided that wilderness programs should be considered intermediate care, or that they are analogous to skilled nursing facilities or rehabilitation hospitals.

*None* of these regulations refer to or purport to require coverage of wilderness programs; nor has there ever been any other rule or guidance suggesting that wilderness programs should be considered intermediate care (as Plaintiff alleges).  And state regulators who issued guidance on this issue—the Massachusetts Commissioner of Insurance and the Massachusetts Commissioner of Mental Health, for instance—also have rejected Plaintiff's position.  These regulators explained: "[t]uition-based programs that offer educational, vocational, recreational or personal development activities, such as a therapeutic school, camp or wilderness program" are "[p]rograms that provide primarily custodial care services" and therefore "are not considered intermediate services."[11]

That the Parity Act regulations do not encompass wilderness programs is unsurprising. State licensing regulations show that wilderness programs are nothing like the types of intermediate care addressed in the Parity Act's regulations.  As the district court stated in *Welp*, "[o]utdoor [y]outh [p]rogram[s]" in Utah have "less rigorous supervision requirements" than a licensed residential treatment program.  *Welp*, 2017 WL 3263138, at *5 n.8.  In Utah, where Wingate is licensed as an outdoor youth treatment program, outdoor youth programs are subject to completely different regulatory requirements than residential treatment programs.

In particular, the types of intermediate care referred to in the regulations—skilled nursing facilities and rehabilitation hospitals for medical care and residential treatment centers for mental health—involve medical facilities staffed with on-site, licensed health care professionals. Wilderness programs do not.

---

[11]  Consumer Affairs and Business Regulation, *Bulletin 2009-11 Access to Intermediate & Outpatient Mental Health & Substance Use Disorder Services* (Sept. 4, 2009), *available at* http://www.mass.gov/ocabr/insurance/providers-and-producers/doi-regulatory-info/doi-regulatory-bulletins/2009-doi-bulletins/2009-11-access-to-intermediate-and-outpatient.html.

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

In Utah, a residential treatment center (intermediate treatment that the Plan covers for mental health and substance abuse) must include on its staff each of the following:  a licensed physician or consulting licensed physician; a licensed psychologist or consulting licensed psychologist; and, a licensed mental health therapist or consulting licensed mental health therapist, to provide a minimum of one hour of service to the program per week per consumer enrolled.  Utah Admin. Code § R501-19-5(D).  Residential treatment facilities are also required to have licensed mental health professionals on staff.  *See Id.*  Similar staffing requirements also apply to "Intermediate Secure Treatment Program[s]" which "provide[] for or arrange[] for the provision of specialized treatment, rehabilitation or habilitation services"  for minors.  *Id.* § R501-16-2.

Skilled nursing facilities and rehabilitation hospitals (intermediate treatment for medical conditions that the Plan covers) also need to be able to provide 24-hour care through licensed professionals.  *See* Utah Admin. Code § R432-150-4(2)(a)-(b) (defining "skilled nursing care" and "intermediate" care as requiring 24-hour inpatient care requiring licensed supervision); *see also id.* § R432-103 (outlining numerous requirements for a rehabilitation hospital); *id.* § R432-101-4(2)(ii) (requiring "an organized medical staff which provides 24 hour inpatient care.").

There are no such requirements for wilderness programs.  Licensure requirements for these outdoor youth programs focus on requirements relevant to the "expeditions" and "stationary camps" that such programs involve—*e.g.*, requiring the correct hiking equipment, outdoor safety, water and nutritional requirements, and school credits received for time spent at the program.  *See generally* Utah Admin. Code § R501-8.  There are no requirements or standards with respect to any mental health treatment to be provided during the outdoor youth program.  *See generally id.*

Nor are wilderness programs required to be staffed by licensed mental health professionals. In Utah, the licensing regulations for wilderness programs merely require "field staff" with "two years of outdoor youth program field experience" and minimum ages of 25 years old (for the most senior positions) and 19 years old (for more junior field staff).   Utah Admin. Code § R501-8-6(3)-(7).  A "treatment professional" is required to be "accessible," but is not required to be on-site at the program.  *Id.* § R501-8-6(8)(b) (the treatment professional is not required to be

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

a psychiatrist or psychologist).[12]  Most wilderness program staffing requirements focus on the field director and field staff, who need to satisfy various field training requirements, but are not required to be licensed mental health professionals.  *Id.* § R501-8-6(3)-(4).[13]

Indeed, because the field staff who run these wilderness programs are typically not licensed mental health providers, under Utah law they are not permitted to provide therapy or other types of mental health care.  Under Utah's Mental Health Professional Practice Act, only certain types of providers licensed by Utah's Division of Occupational and Professional Licensing may engage in the practice of mental health therapy—which Utah defines as the "treatment or prevention of mental illness."  Utah Code § 58-60-102(7) (defining the "practice of mental health therapy").  Under Utah law, providers are authorized to engage in the practice of mental health therapy only if they first satisfy specific licensing requirements—including educational and training requirements—under the Utah Mental Health Professional Practice Act and several other statutes that apply to particular types of providers.  *Id.* § 58-60-103(1)(a) ("An individual shall be licensed" under one of five separate acts to "engage in, or represent that the individual will engage in, the practice of mental health therapy."); *id.* § 58-60-103(1)(b) ("An individual shall be licensed" under one of five separate acts "to practice as, or represent that the individual is, a mental health therapist.").[14]  Anyone who performs these services in Utah without the required license commits a third-degree felony.  *Id.* § 58-60-109(1)(a) ("'[U]nlawful conduct' includes" the "practice of . . . mental health therapy" without a license issued under Title 58 of the Utah Code); *id.* §

---

[12]  The regulations only require preprogram evaluations by a psychologist for children "who have a history of chronic psychological disorders." Utah Admin. Code § R501-8-10(6); *see also id.* § R501-8-10(2) (requiring admissions screening to be supervised by a treatment professional). Any mental health assessments that do take place occur *before* the program starts and may be separately eligible for coverage under the terms of the Educational/Recreational Exclusion.

[13]  Utah regulations refer to the "difficulty of monitoring" wilderness programs (Utah Admin. Code § R501-8-23), which is the antithesis of the skilled nursing and residential programs that are covered under the Plan.

[14]  Pursuant to the Substance Use Disorder Counselor Act, substance abuse counselors are also required to satisfy specific licensing requirements, including *thousands* of hours of related experience, training and education for certain positions.  Utah Code § 58-60-504; *id.* § 58-60-506; *see also id.* § 58-60-502 (defining different substance abuse positions).

DEFS.' MOT. TO DISMISS UNDER RULE 12(b)(6)
(C17-01889 JCC)

19

58-60-111(1) (A person committing an unlawful act as defined in § 58-60-109(1) "is guilty of a third degree felony.").

In short, there is no basis for any attempted comparison between a wilderness program and the type of intermediate services that are addressed by the Parity Act and its implementing regulations and guidance. Indeed, based on the limited state licensing regulations that apply to wilderness programs, they arguably do not even qualify as mental health care providers at all and therefore are not even subject to the Parity Act.

Finally, even if wilderness programs could be considered intermediate care, Plaintiff identifies no reason why such programs would need to be covered. The Plan already covers residential treatment and applies comparable treatment limitations to residential treatment as it does to skilled nursing facilities. Ex. A. at 58; *see also id.* at 322 (defining residential treatment centers); *id.* at 68-69 (outlining skilled nursing coverage and limitations).[15] This renders cases finding Parity Act violations due to categorical exclusions for residential treatment distinguishable. *See, e.g.*, *Joseph F. v. Sinclair Servs., Co.*, 158 F. Supp. 3d 1239, 1262 (D. Utah 2016); *Craft v. Health Care Serv. Corp.*, 84 F. Supp. 3d 748, 754 (N.D. Ill. 2015).

Moreover, a number of other services that present more apt comparisons to wilderness programs are *not* covered by the Plan, such as other recreational programs and boarding schools, as well as "memberships in diet programs or health clubs" and "diabetic support groups." *See* Ex. A at 78 (excluding "memberships in diet programs or health clubs" and "diabetic support groups"); *id.* at 58 (excluding exercise equipment). If wilderness programs were considered intermediate care, then the same would be true for these other excluded medical programs. Plaintiff has not suggested—nor could he—that the Plan would cover these other types of programs. Thus, even *if* wilderness programs were subject to a parity analysis as intermediate care, which they are not, the Plan's non-coverage of other, more analogous services shows that the exclusion of coverage for

---

[15] Among other limiting criteria, coverage for treatment received at skilled nursing facilities excludes custodial care. Ex. A at 68. Significantly, custodial care, or care provided "to assist a person in meeting activities of daily living, and not for therapeutic value or requiring the constant attention of trained medical personnel," *id.*, is all that some wilderness therapy programs provide. And, eligible residential treatment must involve "active treatment in a controlled environment," "[a]t least weekly physician visits," and "treatment by a multi-disciplinary team of *licensed* professionals." *Id.* at 322 (emphasis added).

DEFS.' MOT. TO DISMISS UNDER RULE 12(b)(6)
(C17-01889 JCC)

20

tuition for wilderness programs is at parity with comparable medical services in the same classification.

Accordingly, the Plan complies fully with the Parity Act and its regulations with respect to intermediate treatment, and the Court should dismiss Plaintiff's claims. *See* Preamble, Final Rules, 78 Fed. Reg. at 68,246 (explaining that "the Departments did not intend to impose a benefit mandate through the parity requirement that could require greater benefits for mental health conditions and substance use disorders than for medical/surgical conditions.").

**C.    Plaintiff's Affordable Care Act "Provider Non-Discrimination" Claim Also Fails.**

Plaintiff's alternative theory under the Affordable Care Act, 42 U.S.C. § 300gg-5(a), 29 U.S.C. § 1185d, fails as well. Am. Compl. ¶ 3; *see also id.* ¶¶ 74-86 ("Third Claim"). This theory, too, assumes that the Plan contains a "blanket exclusion" of wilderness programs and contends that such an exclusion should be set aside as "discrimination" against these programs. But the provider non-discrimination provisions of the Affordable Care Act do not require coverage of wilderness programs.

The relevant provision of the Affordable Care Act subtitled "Providers" states, in relevant part, that:

> A group health plan and a health insurance issuer offering group or individual health insurance coverage shall not discriminate with respect to participation under the plan or coverage against any health care provider who is acting within the scope of that provider's license or certification under applicable State law.

42 U.S.C. § 300gg-5(a). Nothing in the provision mandates that a health plan or issuer cover a particular type of treatment. Rather, if a plan covers a particular treatment, such as treatment of back pain, the plan or issuer cannot discriminate with respect to the types of licensed health care providers who are authorized to provide that type of treatment—*e.g.*, refuse to permit any chiropractors into the network, solely because of the fact that they are chiropractors.

This provision of the Act does not help Plaintiff because the Plan does not discriminate among types of providers of wilderness programs; rather, like other services that lack proven effectiveness, the Plan simply does not cover this type of service. Moreover, Wingate is not a "healthcare provider"; rather, Wingate has a license only to provide a wilderness program, as

DEFS.' MOT. TO DISMISS UNDER RULE 12(b)(6) (C17-01889 JCC)

21

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

described above.   Plaintiff has offered no allegations that the Plan discriminates among any types of licensed "health care provider" with respect to any covered services.   Although Plaintiff asserts that Microsoft discriminates against wilderness programs "by denying coverage despite the fact that the services they offer are covered under the terms of the Plan" (Am. Compl. ¶ 85), as discussed *supra*, the Plan clearly does not cover any educational or recreational programs or therapy, including wilderness therapy.   Under the Plan, these services are excluded regardless of who provides them.

Plaintiff's Amended Complaint lacks any factual allegations or legal basis for this alternative theory, and the Court should dismiss it.

**D.     Several Of Plaintiff's Claims Also Fail For Other Reasons.**

All of Plaintiff's claims in the Amended Complaint fail as a matter of law, because his legal theories are unsustainable for the reasons set out above.   Additionally, several of Plaintiff's claims—his claims for injunctive and other prospective relief (in each count of his Amended Complaint), as well as his claim for "losses to the Plan" under Section 502(a)(2) of ERISA (in the second count)—fail for additional, independent reasons.

**1.     Plaintiff Lacks Standing To Seek Injunctive And Other Prospective Relief.**

Plaintiff lacks Article III standing to seek prospective relief.   A plaintiff seeking injunctive or declaratory relief must "demonstrate a reasonable likelihood of future injury" to have Article III standing.   *Bank of Lake Tahoe v. Bank of Am.*, 318 F.3d 914, 918 (9th Cir. 2003); *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 950 (9th Cir. 2002) (plaintiff seeking prospective relief must show that she faces "a credible threat of harm"); *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983) ("Abstract injury is not enough . . . and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" (citations omitted)).   A claim for declaratory or injunctive relief is not sufficiently particularized to meet Article III's case or controversy requirement if it rests upon "'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"   *Bova v. City of Medford*, 564 F.3d 1093, 1096 (9th Cir. 2009) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

In each count of the Amended Complaint, Plaintiff seeks a declaration of rights to coverage of wilderness programs, or an injunction prohibiting Microsoft from excluding coverage of the same.  But Plaintiff has not alleged a reasonable likelihood that he will require mental health treatment at a wilderness program again in the future—or that any such claim would be denied again based on a similar exclusion.  Plaintiff therefore lacks standing to seek this relief.  Plaintiff's prayer for relief reflects merely a "generalized interest in deterrence, which is insufficient for purposes of Article III."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 108-09 (1998).  And "[a]s no class has yet been certified, whether the Defendants are likely to subject other plan participants to the same [allegedly wrongful benefits exclusion] is not relevant."  *Cramer v. John Alden Life Ins. Co.*, 763 F. Supp. 2d 1196, 1210 (D. Mont. 2011); *see also Kohen v. Pac. Inv. Mgmt.*, 571 F.3d 672, 676 (7th Cir. 2009) (recognizing that "*[b]efore* a class is certified . . . the named plaintiff must have standing, because at that stage no one else has a legally protected interest in maintaining the suit." (emphasis in original)).

### 2.      Plaintiff's Claim Under Section 502(a)(2) Fails Because He Does Not Allege Any "Losses To The Plan."

Plaintiff's "Second Claim" is asserted under Section 502(a)(2) of ERISA, which provides a specific remedy only for losses to the plan as a whole—it "does not provide a remedy for individual beneficiaries."  *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996); *see also Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985); *Leckey v. Stefano*, 501 F.3d 212, 226 (3d Cir. 2007) (Section 502(a)(2) "is not a vehicle for individual relief").  Section 502(a)(2) is focused not on providing a remedy to plan members who seek to recover benefits, but rather on providing a remedy to the plan as a whole when it has suffered losses to plan assets, to ensure "the plan's financial integrity."  *Varity*, 516 U.S. at 511–12; *see also LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248, 253 (2008).  To state a claim under Section 502(a)(2), "the plaintiff must assert *a loss to the ERISA plan itself*."  *Leckey*, 501 F.3d at 217 (emphasis added).

Plaintiff tries to shoehorn his claim into the confines of Section 502(a)(2), but his alleged injury—and all of his factual allegations—concern the alleged "denial" of *his* benefits, not a loss to the Plan as a whole.  Am. Compl. ¶ 1.   Although Plaintiff asserts, in conclusory fashion, that

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

he seeks "recovery on behalf of the Plan for its losses" (*id.* ¶ 73), he does not identify any losses to the Plan *or* plead any facts to support such a claim.  *See Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1189 (9th Cir. 2010) (affirming district court's dismissal of plaintiff's breach of fiduciary duty claim, brought under 29 U.S.C. § 1132(a)(2), because the plaintiff "did not allege that the plan as a whole incurred an injury as a result of the Plan Administrators' mishandling of her claim.").  Indeed, if Plaintiff's allegations were true, then the Plan lost nothing and instead gained from the challenged denials, because his claim is that the Plan *failed* to pay amounts that he contends were owed to him.  If successful, his claim would require the Plan *to incur losses*, not make a recovery of losses already incurred by the Plan.  He therefore fails to state a claim under Section 502(a)(2).

## IV.   CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's Amended Complaint in its entirety, with prejudice.  Plaintiff's claims alleging that Microsoft violated the terms of the Plan rest on the flawed attempt either to modify or to read the Educational/Recreational Exclusion out of the Plan.  Plaintiff's alternative argument that the Parity Act and the Affordable Care Act should be held to invalidate any "blanket exclusion" of coverage for wilderness programs fails as well.  Plaintiff cannot identify any analogous medical/surgical treatment that the Plan treats more favorably, and without doing so, he cannot plausibly allege a violation of the Parity Act.  Nor is there any claim under the "anti-discrimination" provision of the Affordable Care Act, which does not fit the facts or legal theory of this lawsuit.  Because Plaintiff's claims are flawed as a matter of law, leave to amend would be futile, and the Amended Complaint should be dismissed with prejudice.

DATED this 2nd day of April, 2018.

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

DAVIS WRIGHT TREMAINE LLP
Attorneys for Defendants


By:   s/ *Rebecca Francis*
        Rebecca Francis, WSBA #41196
        1201 Third Avenue, Suite 2200
        Seattle, WA 98101-3045
        Telephone:  (206) 757-8285
        Facsimile:  (206) 757-7700
        Email:  RebeccaFrancis@dwt.com


GIBSON, DUNN & CRUTCHER LLP
Attorneys for Defendants


By:   s/ *Richard J. Doren*
        Richard J. Doren, CA Bar #12466
        (*Pro Hac Vice*)
        Heather L. Richardson, CA Bar #246517
        (*Pro Hac Vice*)
        333 South Grand Avenue
        Los Angeles, CA  90071-3197
        Telephone:  (213) 229-7000
        Facsimile:   (213) 229-7520
        rdoren@gibsondunn.com
        hrichardson@gibsondunn.com


By:   s/ *Geoffrey Sigler*
        Geoffrey Sigler, DC Bar # 478390
        (*Pro Hac Vice*)
        1050 Connecticut Avenue, N.W.
        Washington, D.C.  20036-5306
        Telephone:  (202) 887-3752
        Facsimile:   (202) 530-9635
        gsigler@gibsondunn.com

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 2nd, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system.  All other parties (if any) shall be served in accordance with the Federal Rules of Civil Procedure.

DATED this 2nd day of April, 2018.

DAVIS WRIGHT TREMAINE LLP
*Attorneys for Defendants*

By:   s/ *Rebecca Francis*
Rebecca Francis, WSBA #41196
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
Telephone:  (206) 757-8285
Facsimile:   (206) 757-7700
Email:  RebeccaFrancis@dwt.com

DEFS.' MOT. TO DISMISS UNDER RULE 12(b)(6)
(C17-01889 JCC)

26