UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| A.H. by and through G.H. and L.C., both individually, and on behalf of the MICROSOFT CORPORATION WELFARE PLAN, and on behalf of similarly situated individuals and plans,<br><br>Plaintiff,<br>v.<br><br>MICROSOFT CORPORATION WELFARE PLAN and MICROSOFT CORPORATION, *et al.*,<br><br>Defendants. | CASE NO. C17-1889-JCC<br><br>ORDER |

This matter comes before the Court on Defendants' motion to dismiss (Dkt. No. 26). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS in part and DENIES in part the motion for the reasons explained herein.

**I.  BACKGROUND**

Plaintiff A.H. brings this putative class action against Defendants Microsoft Corporation and the Microsoft Corporation Welfare Plan (the "Plan") for violations of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.* ("ERISA"), the

Federal Mental Health Parity and Addiction Equity Act (the "Parity Act"), PL 110–343, 122 Stat 3765, codified at 29 U.S.C. § 1185a, and its implementing regulations, and the Affordable Care Act ("ACA"). (Dkt. No. 25 at 14–22.)

Plaintiff A.H. is 16 and suffers from a mental illness and substance abuse disorder. (*Id.* at 1–3.) He is a beneficiary of the Plan based on his mother's employment at Microsoft. (*Id.* at 5.) On February 2, 2016, after conventional treatment had failed, Plaintiff entered Wingate Wilderness Therapy ("Wingate"), which is a wilderness therapy program located in Utah. (*Id.*) Wingate has a state license to provide "Outdoor Youth Treatment for 80 Youth Clients Ages 13 to 17." (Dkt. No. 25-1 at 111.) Plaintiff received behavioral, substance abuse, and mental health services while residing at Wingate from February 2, 2016 to April 11, 2016. (*Id.* at 6.)

Wingate submitted bi-monthly claims to the Plan's claims administrator, Premera Blue Cross ("Premera"), to cover the cost of Plaintiff's attendance.[1] (Dkt. No. 25-1 at 207–212.) Premera determined that the cost of attending Wingate was not covered by the Plan and denied Plaintiff benefits. (*Id.* at 113–123.) Plaintiff internally appealed Premera's decision. (*Id.* at 124–130.) Premera denied the appeal, concluding that "wilderness programs are excluded by the plan."[2] (*Id.* at 214–215.) Plaintiff subsequently filed this lawsuit, challenging Premera's denial of benefits under the Plan.

## II. DISCUSSION

### A. Legal Standard for Motion to Dismiss

Under Rule 12(b)(6), a complaint should be dismissed if it "fails to state a claim upon which relief can be granted." To survive a motion to dismiss, a complaint must contain sufficient

---

[1] Plaintiff attached the bi-monthly claims to the amended complaint. (Dkt. No. 25-1 at 207–212.) Wingate submitted five separate claims to Premera, each corresponding to a two-week period that Plaintiff attended the program. Each claim was for a flat fee labeled "PSYCH-OUTDOOR B/H PROGRAM" that ranged from $5700 to $7600. (*Id.*)

[2] The Court refers to the relevant provision as the "wilderness program exclusion," as the parties have variously done in their briefs. (*See* Dkt. Nos. 31 at 14; 26 at 16.)

factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 678. Although the Court must accept as true a complaint's well-pleaded facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion. *Vasquez v. L.A. Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). The Court may also consider documents incorporated into the complaint by reference and matters of which it can take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

In deciding Defendants' motion to dismiss, the Court will consider all of the documents attached to Plaintiff's amended complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) ("When a plaintiff has attached various exhibits to the complaint, those exhibits may be considered in determining whether dismissal was proper without converting the motion to one for summary judgment.") Plaintiff attached excerpts from the 2016 Summary Plan Description ("SPD"), as well as documents regarding his appeal of Defendants' denial of coverage. (*See generally* Dkt. No. 25-1.) Defendants included with their motion to dismiss a complete version of the 2016 SPD, which the Court references throughout this order. (*See* Dkt. No. 27.)

### B. ERISA Standard of Review

ERISA, 29 U.S.C. § 1132(a)(1)(B), provides an employee a cause of action for the improper denial of benefits under an employee welfare plan. *Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 956 (9th Cir. 2016). To state a claim for benefits under ERISA, plan participants and beneficiaries must plead facts making it plausible that a provider owes benefits under the plan. *See* 29 U.S.C. § 1132(a)(1)(B); *Iqbal*, 556 U.S. at 677. "Depending upon the language of an ERISA plan, a district court reviews a plan administrator's decision to deny benefits either *de novo* or for abuse of discretion." *Ingram v. Martin Marietta Long Term*

*Disability Income Plan*, 244 F.3d 1109, 1112 (9th Cir. 2001) The *de novo* standard is appropriate "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). The burden is on the party seeking discretionary review to establish that such power exists under the plan. *See Ingram*, 244 F.3d at 1112.

Defendants argue that the Court should review Premera's interpretation of the Plan for an abuse of discretion because the Plan confers discretionary authority on its claims administrator. (Dkt. No. 26 at 17.) Plaintiff asks the Court to conduct a *de novo* review because the Plan only confers discretionary authority on Microsoft, not Premera. (Dkt. No. 31 at 10.) The Plan grants Microsoft "complete discretion to interpret and construe the provisions of the plan options, programs, and policies described in this [Plan], to determine eligibility for participation and for benefits . . . ." (Dkt. No. 27 at 336.) The Plan also grants Microsoft authority to delegate this discretion to third-parties. (*Id*.)

Notwithstanding this language, the record does not demonstrate that the Plan confers discretionary authority on Premera, or that Microsoft has delegated its authority. The Plan lists Microsoft, not Premera, as the Plan administrator. (Dkt. No. 27 at 335.) It is undisputed that Premera, not Microsoft, denied Plaintiff's request for benefits. (*See* Dkt. No. 25-1 at 214–15.) The Ninth Circuit has held that:

> where (1) the ERISA plan expressly gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan and (2) pursuant to ERISA, 29 U.S.C. § 1105(c)(1) (1988), a named fiduciary properly designates another fiduciary, delegating its discretionary authority, the 'arbitrary and capricious' standard of review for ERISA claims brought under § 1132(a)(1)(B) applies to the designated ERISA-fiduciary as to the named fiduciary.

*Madden v. ITT Long Term Disability Plan for Salaried Employees*, 914 F.2d 1279, 1283–84 (9th Cir. 1990); *see also Jebian v. Hewlett-Packard Co. Employee Benefits Org.*, 349 F.3d 1098, 1105 (9th Cir. 2003) (noting that deferential review not required where fiduciary has not

delegated discretionary authority to the body rendering the decision at issue).

Just because the Plan confers discretion on Microsoft does not mean that discretion automatically passes to Premera. *See Shane v. Albertson's Inc. Employees' Disability Plan*, 381 F. Supp. 2d 1196, 1203 (C.D. Cal. 2005) ("While the Trustees did have the power to delegate their discretionary authority, nothing presented to the Court indicates that such authority was properly delegated."). Defendants merely point to the Plan language that confers discretion on Microsoft and allows Microsoft to delegate its discretion to third parties. (Dkt. Nos. 26 at 17, 33 at 8.) On this record, Defendant has not met its burden to demonstrate the Plan conferred discretion on Premera regarding benefit determinations such that the Court should apply an abuse of discretion standard. Therefore, the Court reviews Premera's interpretation of the Plan *de novo*.

### C. Wilderness Program Exclusion

Plaintiff alleges that Defendants' denial of the costs of attending Wingate was improper on the terms of the Plan (first claim) and represented a breach of Defendants' fiduciary duties (second claim), both of which violate ERISA.[3] (Dkt. No. 24 at 14–16.)

The Plan covers medically necessary treatment for "mental health such as, but not limited to the diagnosis and treatment of psychiatric disorders . . . [and] chemical dependency such as substance abuse and alcoholism," so long as the treatment is "furnished by an eligible provider."[4] (Dkt. No. 27 at 62.) Under the Plan, an "eligible provider" of mental health or chemical dependency treatment includes any "provider or facility who is licensed or certified by the state in which the care is rendered and who is providing care within the scope of their license or certification." (Dkt. No. 27 at 63.) Plaintiff asserts that Wingate meets the Plan's generic

---

[3] Plaintiff's first and second claims are based on the same factual allegations—i.e. that Defendants violated the terms of the Plan by denying coverage for Wingate when the program should have been covered under the Plan's terms. (Dkt. No. 25 at 15–16.)

[4] In denying Plaintiff's claim, Premera never disputed that Plaintiff's attendance at Wingate was "medically necessary." (*See* Dkt. No. 25-1 at 214–15.)

definition of an "eligible provider" and therefore is not subject to the Plan's wilderness program exclusion. (Dkt. No. 31 at 14–15.) Defendants argue that Plaintiff's suggested interpretation contradicts the plain terms of the Plan and would vitiate the wilderness program exclusion. (Dkt. No. 26 at 13.)

It is undisputed that Wingate is a wilderness therapy program licensed by the State of Utah to provide "outdoor youth treatment." (Dkt. No. 25-1 at 111.) Plaintiff alleges in his amended complaint that Wingate is statutorily authorized to provide "behavioral, substance abuse, or mental health services to minors." (Dkt. No. 25 at 5) (citing UT § 62A-2-101(40)). Plaintiff further alleges that he received a psychiatric assessment when he arrived at Wingate as well as substance abuse and mental health services while attending the program. (*Id*. at 5–6.) Based on these allegations, Wingate meets the Plan's generic definition of an "eligible provider" because it is a state-licensed provider that rendered care to Plaintiff within the scope of its license while Plaintiff attended the program. (*See* Dkt. No. 25-1 at 111.)

The Court must determine, then, whether the Plan's wilderness program exclusion precludes coverage of a wilderness program such as Wingate that provided Plaintiff with mental health and substance abuse treatment and that otherwise meets the generic definition of an eligible provider. District courts should interpret the language of an ERISA benefits plan "in an ordinary and popular sense as would a [person] of average intelligence and experience." *Richardson v. Pension Plan of Bethlehem Steel Corp.*, 112 F.3d 982, 985 (9th Cir. 1997) (citation and internal quotation marks omitted). "Each provision in an agreement should be construed consistently with the entire document such that no provision is rendered nugatory." *Id*.

The Plan expressly excludes coverage for "[e]ducational or recreational therapy or programs; this includes, but is not limited to boarding schools and wilderness programs. . . ." (Dkt. No. 27 at 64.) This specific exclusion of wilderness programs appears to limit the Plan's broader coverage of services rendered by eligible providers. *See Brinderson-Newberg Joint Venture v. Pac. Erectors, Inc.*, 971 F.2d 272, 279 (9th Cir. 1992) ("[w]here there is an

inconsistency between general provisions and specific provisions, the specific provisions ordinarily qualify the meaning of the general provisions.") (citing Restatement of Contracts § 236(c) (1932)).

However, the second sentence of the exclusion provides an exception that states: "Benefits may be provided for medically necessary treatment received in these locations if treatment is provided by an eligible provider." (Dkt. No. 27 at 64.) Plaintiff asserts that the exception to the exclusion "properly recognizes that some wilderness programs are not merely 'educational or recreational,' but are licensed mental health and substance abuse treatment programs that happen to be located in a setting other than a building." (Dkt. No. 31 at 15.) Plaintiff argues that the second sentence of the exclusion applies to Wingate because it qualifies under the Plan's definition of an eligible provider. (*Id.* at 14–15.) Applied to the facts of this case, Plaintiff argues that this clause should be interpreted to read "benefits may be provided for medically necessary treatment received in [the wilderness] if treatment is provided by [Wingate]." (Dkt. No. 31 at 15.)

Conversely, Defendants argue that the exception to the wilderness program exclusion "does not cover 'wilderness programs' themselves, but does cover medically necessary treatment 'received in' the wilderness if 'treatment is provided by an eligible provider'—*e.g.*, medically necessary individual or group therapy by a licensed psychiatrist or therapist." (Dkt. No. 26 at 14) (emphasis in original). In other words, Defendant argues that while the fees and costs of a wilderness program are not covered, medically necessary treatment rendered by a licensed provider during the program could be covered. (*Id.* at 14) ("Plaintiff therefore could submit a request for coverage of these latter services, if they were received while he was enrolled in the wilderness program."[5]).

---

[5] Defendants suggest that Plaintiff does not allege that he participated in therapy or that licensed professionals were involved with his treatment. (Dkt. No. 26 at 14.) However, in the amended complaint, Plaintiff specifically alleges that he received a psychiatric assessment at

Applying a *de novo* review of Premera's denial, the Court concludes that Plaintiff has plausibly alleged facts that demonstrate Wingate could qualify as an eligible provider under the exception to the wilderness program exclusion. The general exclusion is for "[e]ducational or recreational therapy or programs." (Dkt. No. 27 at 64.) Although this exclusion includes "wilderness programs," the exception appears to create a carve-out that would allow coverage for some wilderness programs but not others depending on the services they provide. For example, wilderness programs that offer services that are primarily educational or recreational would clearly be excluded; whereas, wilderness programs that are state-licensed and offer medically necessary mental health or substance abuse treatment may be covered. Moreover, the Plan's definition of "eligible provider," could encompass a state-licensed wilderness program offering medically necessary mental health or substance abuse treatment.

Defendant argues that the term "eligible provider," as used in the exception to the wilderness program exclusion, refers to individual providers such as "a licensed psychiatrist or therapist." (Dkt. No. 26 at 14.) But the exception uses the term "eligible provider" which, as the Court has noted, is not limited to individual practitioners. (Dkt. No. 27 at 63–64.) The Court also disagrees with Defendants that Plaintiff's interpretation would "render superfluous" the wilderness program exclusion. (Dkt. No. 26 at 16.) A state-licensed wilderness program that does not provide medically necessary mental health or substance abuse treatment could still be precluded under the exception. Indeed, Defendants discuss at length how wilderness programs can vary depending on a program's licensing or services provided. (*See* Dkt. No. 26 at 15, 21.)

The non-binding case Defendants cite in support of their position is distinguishable. *See Elizabeth L. v. Aetna Life Insurance Co.*, No. C13-2254-SC, slip op. (N.D. Cal. Feb. 23, 2015). In *Elizabeth L*, the benefits plan at issue required that a "Residential Treatment Facility" have an "[o]n-site licensed Behavioral Health Provider 24 hours per day/7 days a week." *Id*. The plan

---

Wingate and that he "received behavioral, substance abuse/and or mental health services for his mental health conditions" while at Wingate. (Dkt. No. 25 at 5–6.)

also provided a generic definition of "Behavioral Health Provider/Practitioner" as a "licensed organization or professional" that provides certain behavioral health services. *Id*. Plaintiffs argued that they received care at a qualifying residential treatment facility even though it did not have a professional behavioral health provider on-site 24 hours per day/7 days a week, because the facility itself was the required "behavioral health provider" under the plan's generic definition. *Id*. The district court rejected this interpretation because it made no sense for a facility "to be on-site . . . 24 hours per day/7 days a week." *Id*. Effectively, Plaintiffs' interpretation would have read the 24/7 requirement out of the plan. *Id*.

The exclusion in this case does not pose the same problem. As the Court has noted, a wilderness program could be eligible or ineligible for coverage depending on the type of treatment it provides. Allowing coverage for a state-licensed wilderness program that offers medically necessary mental health and substance abuse treatment would not prevent the denial of coverage for a wilderness program that did not provide such treatment. Therefore, the wilderness program exclusion and its exception, as applied to the facts of this case, can be harmonized without rendering the former nugatory.

The Court concludes that Plaintiff has plausibly alleged that Wingate was an eligible provider, as that term is used in the second sentence of the wilderness program exclusion. Therefore, Defendants' motion to dismiss Plaintiff's first and second claim[6] based on the Plan's wilderness program exclusion is DENIED.

### E. Parity Act

In the alternative[7], Plaintiff asserts that the wilderness program exclusion violates the Parity Act because it imposes stricter limitations on mental health and substance abuse treatment than it does for medical and surgical care. (Dkt. No. 25 at 8.) Defendants argue that the

---

[6] The Court readdresses claim two *infra* on a separate basis. Part II.G.

[7] Plaintiff's first and second claim do not construe the wilderness program exclusion as applying to a program such as Wingate. (Dkt. No. 25 at 14–16.) His third claim, however, treats it as a blanket exclusion. (*Id*. at 17.)

wilderness program exclusion applies equally to all Plan benefits—whether mental health related or otherwise. (Dkt. No. 26 at 22.) They also argue that wilderness programs are not a form of intermediate services that are protected by the Parity Act. (*Id.*)

Under the Parity Act, when a group health plan provides coverage for both medical benefits and mental health and substance abuse benefits, the plan must ensure that:

> [T]he treatment limitations applicable to such mental health or substance abuse disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan (or coverage) and there are no separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits.

29 U.S.C. § 1185a(3)(A)(ii). To state a Parity Act violation, a plaintiff must show that: (1) the relevant group health plan is subject to the Parity Act; (2) the plan provides both medical/surgical benefits and mental health or substance use disorder benefits; (3) the plan includes a treatment limitation for mental health or substance use disorder benefits that is more restrictive than medical/surgical benefits; and (4) the mental health or substance use disorder benefit being limited is in the same classification as the medical/surgical benefit to which it is being compared. *See* 29 C.F.R. § 2590.712(c)(2)(i); *see also Bushell v. UnitedHealth Grp. Inc.*, No. 17-CV-2021-JPO, slip op. at 5 (S.D.N.Y. Mar. 27, 2018).

The Parity Act's implementing regulations define "treatment limitations" to include both "quantitative" and "nonquantitative" limitations. 29 C.F.R. § 2590.712.[8] The regulations do not provide a comprehensive definition of "nonquantitative" limitations, but do include as an illustrative example: "[r]estrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for services provided under the plan or coverage." *Id.* at § 2590.712(c)(4)(C). The regulations also establish six "classifications of benefits" for determining Parity Act compliance: (1) inpatient, in-network; (2) in-patient, out-of-network; (3) outpatient, in-network, (4) outpatient, out-of-network; (5)

---

[8] The parties agree that the wilderness program exclusion is a non-quantitative limitation.

emergency care; and (6) prescription drugs. *Id*. at (c)(2)(i)–(ii)(A). Under the Final Rules implementing the Parity Act, Group health plans are prohibited from imposing:

> [A] nonquantitative treatment limitation with respect to mental health or substance use disorder benefits in any classification unless, under the terms of the plan (or health insurance coverage) as written and in operation, any processes, strategies, evidentiary standards, or other factors used in applying the nonquantitative treatment limitation to mental health or substance use disorder benefits in the classification are comparable to, and are applied no more stringently than, the processes, strategies, evidentiary standards, or other factors used in applying the limitation with respect to medical/surgical benefits in the classification.

*Id*. at (c)(4). Plaintiff alleges that wilderness programs such as Wingate are appropriately classified as intermediate services in the context of mental health treatment, and are analogous to skilled-nursing facilities and rehabilitation hospitals in the medical/surgical context. (Dkt. No. 25 at 8–9.) Plaintiff goes on to assert that the Plan's blanket exclusion of "wilderness behavioral healthcare programs" places a treatment limitation on intermediate services for mental healthcare treatment "that is not in parity with the treatment limitations it imposes on comparable intermediate medical/surgical services . . . ." (*Id*.)

Plaintiff has not plausibly alleged facts that demonstrate the exclusion at issue represents a treatment limitation on mental health or substance use disorder benefits that is more restrictive than medical/surgical benefits. Plaintiff characterizes the exclusion to apply to "wilderness *behavioral healthcare* programs," but the Plan's language is not nearly that specific. (Dkt. No. 25 at 9) (emphasis added). The Plan excludes "[e]ducational or recreational therapy or programs; [including] wilderness programs." (Dkt. No. 27 at 64.) This non-specific exclusion appears under the mental health and chemical dependency section, as well as the generalized "exclusions and limitations" applicable to all Plan benefits. (*Id*. at 81–83.) This suggests that the wilderness program exclusion applies to all medical benefits.

Plaintiff does not point to anything in the Plan or the administrative record that shows the wilderness program exclusion is only applied to mental health treatment. Plaintiff makes the conclusory allegation that wilderness therapy is "a form of intermediate therapy to treat mental

illnesses" but that characterization is not supported by the Plan's language. *See Vasquez*, 487 F.3d at 1249 (district court not required to accept conclusory allegations of law and unwarranted factual inferences). As Defendants point out, wilderness programs and other "recreational therapy" can be used to treat injuries and illnesses aside from mental health or substance abuse issues. (Dkt. No. 26 at 21.)

The cases Plaintiff cites in support of his position are distinguishable. For example, each dealt with a health plan's exclusion of residential treatment specific to mental health issues, not wilderness programs generally. (Dkt. No. 31 at 20–23) (citing *Natalie V. v. Health Care Serv. Corp.*, No. 15C-9174-EEC, slip op. at 6 (N.D. Ill. Sept. 13, 2016); *Joseph F. v. Sinclair Servs. Co.*, 158 F. Supp. 3d 1239, 1262 (D. Utah 2016)). Two additional courts that have dealt with Parity Act claims in the context of wilderness programs have dismissed the claims where the plaintiffs failed to allege facts demonstrating that the exclusion of such programs represented a sufficient nonquantitative treatment limitation. *See Welp v. Cigna Health & Life Ins. Co.*, No. 17-80237-CIV, slip op. at 5 (S.D. Fla. July 20, 2017); *A.Z. v. Regence Blueshield*, No. C17-1292-TSZ, slip op. at 1 (W.D. Wash. Feb. 15, 2017).

Further, in *Natalie V.*, the health plan at issue "only covered treatment at residential treatment centers for substance use disorders, not for mental illness." No. 15C-9174-EEC, slip op. at 1. The Plan in this case appears to exclude benefits for all wilderness programs. (Dkt. No. 25-1 at 64.) Similarly, in *Sinclair* the plan in question defined "residential treatment facilities" in a way that made the benefit available only for mental health conditions. 158 F. Supp. 3d at 1262. When the plan subsequently created a residential treatment exclusion, "it necessarily imposed a treatment limitation that [applied] only with respect to mental health conditions," based on the Plan's definition of that service. *Id*. Here, there is no evidence in the record that demonstrates the wilderness program exclusion only applies to mental health treatment. In fact, the Plan language and Premera's denial letter suggest the opposite. (*See* Dkt. Nos. 27 at 64, 25-1 at 214.)

Plaintiff has not plausibly alleged facts demonstrating that the Plan's exclusion represents

a treatment limitation that is more restrictive for mental health benefits than other medical benefits.[9] Accordingly, Plaintiff's Parity Act claim is DISMISSED without prejudice and with leave to amend. If Plaintiff chooses to file an amended complaint, he must allege facts that plausibly demonstrate that the Plan's wilderness program exclusion only places a limitation on mental health or chemical dependency treatment.

### F. Affordable Care Act

Plaintiff asserts that the Plan's wilderness program exclusion violates the ACA's provider anti-discrimination provision because it discriminates against mental healthcare providers that act within in the scope of their license under applicable state law. (Dkt. No. 25 at 9.) Defendants argue that Plaintiff attempts to expand this ACA provision beyond its intended purpose. (Dkt. No 26 at 27.) The relevant ACA provision states that "a group health plan and a health insurance issuer offering group or individual health insurance coverage shall not discriminate with respect to participation under the plan or coverage against any health care provider who is acting within the scope of that provider's license or certification under applicable State law." 42 U.S.C. § 300gg-5(a).

Plaintiff argues that Defendants "discriminated against his provider by denying coverage not because the therapy was ineffective or not medically necessary, but because his covered mental health and substance abuse services were being rendered by a certain category of provider." (Dkt. No. 31 at 26.) Plaintiff's position is unsupported by the plain language of the statute. The ACA's anti-discrimination provision does not require a health plan to provide coverage for any treatment just because it is rendered by a state-licensed provider. It merely requires that insurers not discriminate against state-licensed providers when their services are covered by a healthcare plan. Plaintiff does not cite a single case that supports its expansive

---

[9] The Court does not reach the issue of whether a wilderness program is appropriately classified as an "intermediate service" comparable to analogous medical treatments.

ORDER
C17-1889-JCC
PAGE - 13

reading of this provision, which, if adopted, would require insurers to cover any treatment performed by a state-licensed provider.

Accordingly, Plaintiff's ACA claim is DISMISSED with prejudice.[10]

### G.  Standing and Liability under ERISA Section 502(a)(2)

Defendants additionally argue that Plaintiff lacks standing to seek injunctive or declaratory relief that is prospective in nature, and that Plaintiff's second claim asserted under Section 502(a)(2) of ERISA is invalid because Plaintiff does not allege losses to the Plan as a whole. (Dkt. No. 26 at 28–29.)

Defendants argue Plaintiff lacks Article III standing to seek prospective injunctive and declaratory relief because he cannot "demonstrate a reasonable likelihood of future injury." (*Id.* at 28) (citing *Bank of Lake Tahoe v. Bank of Am.*, 318 F.3d 914, 918 (9th Cir. 2003). Plaintiff, on behalf of a putative class, seeks "a declaration of their rights to coverage of medically necessary mental health and/or substance abuse treatment in outdoor/wilderness behavioral healthcare programs without the application of Defendants' blanket exclusion of wilderness programs." (Dkt. No. 25 at 15.) An ERISA beneficiary is allowed to bring a civil action to "clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Moreover, a beneficiary of an ERISA plan need not demonstrate a threat of future harm in order to obtain injunctive relief requiring a plan fiduciary to comply with its statutory duties. *See Horvath v. Keystone Health Plan E., Inc.*, 333 F.3d 450, 456 (3d Cir. 2003). Therefore, the Court concludes that Plaintiff has standing to seek injunctive and declaratory relief under the relevant ERISA provisions.

Defendants also argue that Plaintiff's second claim cannot be maintained under ERISA § 502(a)(2) because he does not allege "losses to the Plan as a whole." (Dkt. No. 26 at 29.) A claim for fiduciary breach gives a remedy for injuries to the ERISA plan as a whole, but not for injuries suffered by individual participants as a result of that breach. *LaRue v. DeWolff, Boberg*

---

[10] The Court can conceive of no facts that would make Plaintiff's ACA claim viable.

*& Assocs., Inc.*, 552 U.S. 248, 254 (2008); *see also Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1189 (9th Cir. 2010) ("While Wise's complaint alleges that the § 1132(a)(2) claim is brought on behalf of, and for the benefit of, the plan and all its participants, there are no factual allegations that the Plan Administrators violated their duties with respect to anything other than Wise's individual claim."). Plaintiff's second claim for breach of fiduciary duty seeks "recovery on behalf of the Plan for its losses." (Dkt. No. 25 at 16.) That allegation is conclusory, however, as Plaintiff has not offered any facts that demonstrate the denial of coverage for wilderness programs has caused losses to the Plan itself. Indeed, as Defendants point out the denial of coverage likely resulted in savings to the Plan, not losses. (Dkt. No. 26 at 30.)

Plaintiff attempts to get around this deficiency by seeking only "non-monetary equitable relief" under his breach of fiduciary duty claim. (Dkt. No. 25 at 16) (citing *Shaver v. Operating Engineers Local 428 Pension Tr. Fund*, 332 F.3d 1198, 1203 (9th Cir. 2003)) (where plaintiff seeks "purely equitable relief" he is not required to provide a showing of loss.) *Shaver* does not negate binding precedent that requires a beneficiary to plausibly allege that a Plan has suffered losses to maintain a breach of fiduciary duty claim under § 1132(a)(2). Furthermore, unlike in *Shaver*, Plaintiff is not seeking only equitable relief, but also the recovery of benefits. (Dkt. No. 25 at 15.) Plaintiff's request for "non-monetary equitable relief" does not save his breach of fiduciary duty claim as pled in claim two.

Therefore, the Court DISMISSES Plaintiff's claim two with leave to amend. If Plaintiff chooses to file an amended complaint, he must allege facts demonstrating that the Plan was injured as a result of Defendants' conduct.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 26) is GRANTED in part and DENIED in part. In accordance with the Court's order:

1. Defendant's motion to dismiss Plaintiff's claim one is DENIED.

2. Plaintiff's claim two is DISMISSED without prejudice and with leave to amend.

1. 3. Plaintiff's Parity Act claim as alleged in claim three is DISMISSED without prejudice and with leave to amend.

4. Plaintiff's ACA claim as alleged in claim three is DISMISSED with prejudice.

If Plaintiff chooses to file a second amended complaint, he must do so within 30 days from the issuance of this order. Amendment is permitted solely to address the deficiencies described above.

DATED this 5th day of June 2018.

John C. Coughenour
UNITED STATES DISTRICT JUDGE